[L. A. No. 6235. In Bank.—August 8, 1921.]

E. A. GRAY et al., Respondents, v. THE JANSS INVESTMENT COMPANY et al., Appellants.

[1] BROKERS—DIVISION OF COMMISSIONS—AGREEMENT—PLEADING AND FINDING—IMMATERIAL VARIANCE.—In an action by real estate brokers to recover of other brokers a part of the commissions received by the defendants from both parties to an exchange of real properties, a finding that the agreement of the brokers was that the respective brokers should receive the commission coming from their end of the exchange is not a fatal variance from the issue raised by the pleadings that the agreement was that the defendants would collect the commission from both principals and divide the same with the plaintiffs, in view of the fact that both agreements were related to and arose out of the same transaction and that the case was tried upon the theory that the agreement was the one found by the trial court.

[2] TRIAL—THEORY OUTSIDE OF PLEADINGS.—Where the trial court and the parties to the action proceed to a trial of the action upon a theory not strictly in accord with the issues raised by the pleadings, and the trial court upon evidence adduced to that issue, and received without objection upon the ground of variance, finds in

accordance with that evidence and upon the theory that it was addressed to a material issue in the case, neither of the parties will be heard to say on appeal for the first time that there was no such issue.

[3] BROKERS—AGREEMENT FOR DIVISION OF COMMISSIONS—STATUTE OF FRAUDS.—An agreement between real estate brokers to co-operate in an exchange of properties and divide the commissions does not fall within the inhibition of subdivision 6 of section 1624 of the Civil Code, requiring an agreement authorizing a broker to sell real estate to be in writing.

[4] ID.—MANNER OF HANDLING EXCHANGE—AGENCY BETWEEN BROKERS. Under an agreement between real estate brokers giving the brokers representing one of the parties the privilege of exclusively conducting exchange negotiations, such brokers became the agents of the other brokers in negotiating their end of the exchange, and the commissions received by them from such end belonged to such other brokers, regardless of whether in the absence of a valid agreement of employment the latter would have been entitled to a commission had they alone conducted such end of the exchange.

[5] ID.—RECEIPT OF LAND AS COMMISSION—RIGHTS OF OTHER BROKERS. Where under such an agreement the brokers received land instead of money as commission from the end of the exchange in which they acted as agents for the other brokers, the latter were entitled to have such land conveyed to them, rather than a money judgment to the extent of the value of the land.

[6] COSTS — REVERSAL OF JUDGMENT — MINOR PARTICULAR.—Where a judgment is reversed with directions for certain modifications in a minor particular not seriously urged as a ground for reversal, but affirmed in all of its essential features, the appellants are not entitled to recover their costs

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Lloyd W. Moultrie for Appellants.

James E. Kelby and Kemp & Clewett for Respondents.

LENNON, J.—In this action the plaintiffs, real estate brokers, sued the defendants, also real estate brokers, pursuant to the terms of an alleged oral agreement, for the recovery of one-half of a commission alleged to have been paid to the defendants by both parties to an exchange of real properties.

The plaintiffs' complaint alleged, among other things, that, as a result of several conferences between the plaintiffs and defendants concerning the exchange of the said real properties, an agreement was entered into between plaintiffs and defendants whereby any commission or compensation which should be earned and paid should be equally divided between the plaintiffs and defendants. Subsequently, and as the result of further conferences and negotiations between the plaintiffs and the defendants, it was agreed between them, so the complaint alleged, that for the purpose of more effectively promoting an exchange of said real properties, the plaintiffs would not actively participate in the exchange negotiations and that the same should be conducted solely by the defendants, who thereupon and in consideration thereof promised and agreed with the plaintiffs to charge and collect, upon the consummation of the contemplated exchange, a commission from both owners and to divide the same with plaintiffs. Thereupon and thereafter the plaintiffs confided the entire management and control of the negotiations for the exchange of the said properties to said defendants. In short, plaintiffs' complaint proceeded upon the theory that the agreement between plaintiffs and defendants as formulated and made was, in effect, one of copartnership in the promotion of the proposed exchange and a division of the commissions between the plaintiffs and the defendants which were to be collected by the defendants alone from both principals. The defendants consummated an exchange of the said properties and collected from each of the respective owners of the said real properties a large commission and compensation.

The complaint further alleged that defendants concealed from plaintiffs the character, extent, and amount of the commissions so received by them from both owners of the said real properties, and that although plaintiffs demanded an accounting therefor, the defendants refused to acknowledge plaintiffs' claim of an interest in any part of said commissions so received.

The facts adduced in support of plaintiffs' case are substantially these: The defendant, the Janss Investment Company, doing business as real estate brokers in the city of Los Angeles, was the agent for the owners of certain lands in the states of Idaho and Utah who were desirous of exchang-

ing the same for income property situate in the city of Los
Angeles, and accordingly listed said lands with the defend-
ants for such an exchange. At about the same time, the
owners of a certain apartment house in the city of Los An-
geles, known as the Bowers Hotel, listed the same with the
plaintiffs for exchange, and one of the plaintiffs, accom-
panied by the owner of the Bowers Hotel, inspected the same
for the purpose of acquiring data to be used in negotiating
an exchange of said property. Subsequently, and prior to
the time of plaintiffs' entering into negotiations with the de-
fendant, Janss Investment Company, the plaintiffs made
several separate endeavors to sell or exchange the Bowers
Hotel property, and with that end in view said property was
shown to several prospective purchasers. Some time in the
month of June, 1917, after the Bowers Hotel property had been
listed with the plaintiffs, a Mr. Shiffer, a real estate broker
operating in the city of Los Angeles, inquired of the plain-
tiffs if they had listed with them and could submit for ex-
change for Idaho and Utah lands income business property
in the city of Los Angeles. Plaintiffs replied that they had
listed with them several such properties, including the
Bowers Hotel property. Thereupon, Mr. Shiffer stated that
he was making inquiries for Mr. Kendall, of the Janss In-
vestment Company, and upon the following day he brought
Kendall to the office of the plaintiffs, who then and there
submitted to Mr. Kendall, for exchange, a list of several
properties situated in the city of Los Angeles, including the
Bowers Hotel property. Kendall mentioned the Idaho and
Utah lands, and after giving a description of the same to
plaintiffs, said: "I think that that Bowers Hotel will inter-
est my party." Plaintiffs thereupon prepared and presented
to Mr. Kendall for the defendant, Janss Investment Com-
pany, a typewritten detailed description of the Bowers Hotel
property and thereafter were in frequent communication
with Mr. Kendall concerning the details of the proposed ex-
change. The plaintiffs and defendants had several confer-
ences for the purpose of getting their principals together on
a proposition for an exchange of their respective properties.
These conferences, conducted by the plaintiffs and the defend-
ant Kendall as agent of the Janss Investment Company, cul-
minated in a proposal from Kendall, accepted by plaintiffs,
that plaintiffs and defendants work together in negotiating

an exchange of the properties of their respective principals. At that time, and as a part of these conferences, the defendant, Janss Investment Company, through their agent Kendall, furnished plaintiffs with a description and list of the properties in Idaho and Utah which were to be exchanged for the property of the plaintiffs' principal situated in the city of Los Angeles. Thereupon, the plaintiffs presented the proposition of exchange to their principal, the owner of the Bowers Hotel in Los Angeles. It was understood and agreed between plaintiffs and defendants in the first instance that the plaintiffs for their commission would look to their principal, the owner of the Bowers Hotel, and that the defendants for their commission would look to their principals, the owners of the Idaho and Utah lands.

While the exchange negotiations were pending, and prior to the time that the said Idaho and Utah land owners examined the Bowers Hotel property, the defendant Kendall, as agent for the Janss Investment Company, stated to the plaintiffs that complications would be avoided if the Janss Investment Company handled the deal alone, and for that reason requested that the plaintiffs permit the Janss Investment Company to handle the whole of said deal alone, and then and there stated to the plaintiffs that such an arrangement would make no difference to the plaintiffs in so far as their compensation was concerned, and, in effect, said further that the defendant, Janss Investment Company, would protect the plaintiffs in the adjustment and collection of their commission from the owners of the Bowers Hotel property.

The plaintiffs acceded to Kendall's proposition in this behalf, and he thereupon requested, and the plaintiffs thereupon consented, that he alone be permitted to show the Bowers Hotel property to his principals.

After the consummation of the exchange, the defendant, the Janss Investment Company, in lieu of a cash commission of three thousand five hundred dollars from the owners of the Bowers Hotel property, accepted, so the defendant Kendall testified, with said owners' consent and concurrence, from the Idaho and Utah land owners, a conveyance of 160 acres of land admittedly worth thirty dollars an acre. It is a fair inference from the evidence adduced upon the whole case that said 160 acres of land would otherwise have been

conveyed to the owner of the Bowers Hotel property as a part of the lands given in exchange for his said property. The defendant, Janss Investment Company, received the sum of $720 in cash from the Idaho and Utah land owners as reimbursement for expenditures made in negotiating the exchange, and for their commission, in negotiating the Idaho and Utah land owners' end of the exchange, received from said owners a conveyance of thirty-five acres of land situated in the state of Utah, presumably of the same value as the 160 acres agreed to be conveyed to said defendants as a commission from the Bowers Hotel end of the exchange. In addition to said thirty-five acres, the said defendants entered into an agreement with the Idaho and Utah land owners, whereby, as further compensation and in lieu of a cash commission for making said exchange, defendants were to receive from said Idaho and Utah land owners, on demand, a conveyance of an additional 135 acres of land in the same location and presumably of the same value as the thirty-five acres already conveyed to said defendant.

The defendant, Janss Investment Company, did not then nor thereafter communicate to the plaintiffs the fact that they had adjusted said commissions earned in making said exchange, and on the demand for a statement from the said plaintiffs as to the amount of commissions collected from the owners of the Bowers Hotel property refused to disclose to plaintiffs the amount or character of the commissions earned by them.

Kendall, the agent of the Janss Investment Company, among other things, testified to the arrangement he had made with plaintiffs concerning their commission to the effect that it was the original agreement with the plaintiffs that they should receive their commission from the owner of the Bowers Hotel, and that the Janss Investment Company should receive its commission from the owners of the Idaho and Utah lands. Kendall also testified that at the inception of the exchange negotiations and for some little time thereafter he considered that the plaintiffs had an interest in whatever commissions might be earned and collected for making the exchange, but that immediately before the deal was closed he concluded by a process of deduction, all his own, that the plaintiffs were not entitled to any consideration

at all in the matter of the sharing of commissions as originally agreed upon.

From these, among other facts, the trial court made its findings to the effect that the agreement between the plaintiffs and the defendants was that the defendants alone should conduct the negotiations for the exchange, that the plaintiffs should receive whatever sum was paid as a commission by the owners of the Bowers Hotel property, that the defendant, Janss Investment Company, should receive whatever sum was paid as a commission by the Idaho and Utah land owners, and that the said defendant was to make arrangements for the payment of the commission of the plaintiffs in accordance with said agreement.

The trial court also found the value of said 160 acres of land which by agreement were to be conveyed to the Janss Investment Company as a commission from the Bowers Hotel end of the exchange was the sum of three thousand five hundred dollars. No further question is raised in the case and none is involved upon the record before us of the invalidity of the agreement to divide the commissions upon the ground of public policy because made secretly and without the knowlelge of either or both principals.

Clearly, the evidence adduced in behalf of the plaintiffs' case, as hereinbefore epitomized, not only supports the finding of the trial court to the effect that the plaintiffs and defendants entered into an agreement whereby they would co-operate in an endeavor to negotiate an exchange of the properties of their respective principals, but warrants as well the further finding that such an agreement was subsequently modified to the extent of permitting the defendant to negotiate the exchange alone and collect the commissions therefor from both parties for the joint benefit of both plaintiffs and defendants. Strictly construed, the trial court's finding that the agreement of the parties was that the plaintiffs should receive the commission coming from the Bowers Hotel end of the exchange, and that the defendants should receive the commission coming from the Idaho and Utah land owners, is nonresponsive to the issue raised by the pleadings that the agreement of the parties was that the defendants would collect the commission from both principals to the exchange and divide the same with the plaintiffs.

[1]   This variance, however, is not found in the proof of a totally dissimilar and independent agreement from that pleaded in the plaintiffs' complaint.  The most that can be said is that the agreement found varies in its terms from the pleaded agreement, but the fact remains that both agreements were related to and arose out of the same transaction. Consequently, the variance could not have so misled or surprised the defendants as to have placed them at a disadvantage, and that being so, the variance cannot be held to warrant the reversal of the judgment.  (*Geiger* v. *Kiser,* 47 Colo. 297, [107 Pac. 267].)   In any event, this variance cannot be held to be fatal to the judgment when measured by the fact that, apparently, the case was tried by the trial court with the acquiescence of counsel for both parties upon the theory that the agreement of the plaintiffs and defendants was the agreement found by the trial court rather than the precise agreement pleaded in the plaintiffs' complaint.
[2]   Conceding, therefore, a variance between the pleaded agreement and the proven and found agreement, still the defendants will not be heard to complain of the same after judgment, for it is the rule that where the trial court and the parties to the action proceed, as the record shows was done in the instant case, to a trial of the action upon a theory not strictly in accord with the issues raised by the pleadings, and the trial court, upon evidence adduced to that issue, and received without objection upon the ground of variance, finds in accordance with that evidence and upon the theory that it was addressed to a material issue in the case, neither of the parties will be heard to say on appeal for the first time that there was no such issue.  (*Clark* v. *Allen,* 125 Cal. 276, [57 Pac. 985] ; *Schroeder* v. *Mauzy,* 16 Cal. App. 443, [118 Pac. 459] ; *Frear* v. *Sweet,* 118 N. Y. 454, [23 N. E. 910] ; *Kaufman* v. *Bloch,* 5 Misc. Rep. 404, [25 N. Y. Supp. 758].)
[3]   There is no merit in the contention that the agreement between the plaintiffs and defendants is void because not in writing.   The agreement is not one to pay a commission for the sale or exchange of real property.   None of the parties to the agreement undertook to pay the other a commission. They obligated themselves in the first instance to do no more . than co-operate in the exchange and divide the commissions earned therefor, and the subsequent modification of the

186 Cal.—41

original agreement, whether as pleaded in the plaintiff's complaint or as found by the trial court upon the issue raised by the evidence, left it still a co-operation agreement between broker and broker to divide commissions, and consequently does not fall within the inhibition of subdivision 6 of section 1624 of the Civil Code. (*Gorham* v. *Heiman,* 90 Cal. 346, [27 Pac. 289]; *Casey* v. *Richards,* 10 Cal. App. 57, [101 Pac. 36]; *Johnston* v. *Porter,* 21 Cal. App. 97, [131 Pac. 69]; *Sellers* v. *Solway Land Co.,* 31 Cal. App. 259, [160 Pac. 175]; *Baker* v. *Thompson,* 14 Cal. App. 175, [111 Pac. 373].)

[4] Plaintiffs having confided to the defendants at the latter's request, and for the purpose of more effectively promoting the exchange, the privilege of exclusively conducting the exchange negotiations, the defendants thereby became the agent of the plaintiffs in negotiating the Bowers Hotel end of the exchange. Therefore, as between the plaintiffs and the defendants, the commission received by the defendants from the Bowers Hotel end of the exchange was received for and belonged to the plaintiffs (*Kohn* v. *Jacobs,* 4 Misc. Rep. 265, [23 N. Y. Supp. 1033]), and having been received by the defendants was recoverable from them, regardless of whether or not, in the absence of a valid agreement of employment between the plaintiffs and the owner of the Bowers Hotel property, the plaintiffs would have been entitled to a commission from said owner had they alone conducted the Bowers Hotel end of the exchange. (*Dearing* v. *Sears,* 50 Hun, 604, [3 N. Y. Supp. 31]; *Kohn* v. *Jacobs, supra; Kaufman* v. *Bloch, supra; Johnston* v. *Porter, supra.*)

[5] It is contended that, granting, as we find, that the plaintiffs have a cause of action upon the pleaded and proven facts, still the judgment in their favor should have been only for a recovery of the land received by the defendant, the Janss Investment Company, as a commission from the Bowers Hotel end of the deal, rather than a money judgment to the extent of the value of said land. This contention, we think, must be sustained. The agreement in suit, although it covered but a single transaction, in effect created a partnership between plaintiffs and defendants, and, therefore, in this action for an accounting the plaintiffs' judgment, in strictness, upon principle, and in keeping with the agreement found by the trial court, should have directed the defendants

to make a conveyance to the plaintiffs of the land received as a commission from the Bowers Hotel end of the deal or pay to plaintiffs the value thereof.

The judgment is reversed, with directions to the court below to enter judgment upon the findings as made, that the defendant, Janss Investment Company, convey to plaintiffs the land received by said defendant as a commission from the Bowers Hotel end of the deal; and for the purpose of having an effective judgment, the court below, before modifying the judgment as now directed, is directed to take evidence for the purpose of determining whether or not the said defendant still retains an unencumbered title to said land and is in a position to convey it to the plaintiffs, and if upon the taking of such evidence the court finds to the contrary, then the judgment shall be for the plaintiffs for the value of the land as originally found.

Sloane, J., Shaw, J., Angellotti, C. J., Lawlor, J., and Shurtleff, J., concurred.

THE COURT.—[6] The judgment in the above-entitled cause having been in effect affirmed in all of its essential features and having been reversed with directions for certain modifications in a minor particular, not seriously urged by the appellant as a ground for reversal, it is ordered that the appellants do not recover their costs on appeal.